May it please the Court, I'm Vivian Fu for Petitioner-Appellant Michael Garcia. I'd like to reserve one minute for rebuttal. I'll try and watch my time. Unless the Court has a preference, I'll begin with the violation of Mr. Garcia's Sixth Amendment right to choice of counsel, which occurred when the trial court denied his repeated request to discharge his privately retained counsel, Brenda Vargas, and failed to make an appropriate inquiry into the conflict between Mr. Garcia and his lawyer. Was this a timely request? This this the first request occurred on November 28th, which was on the date scheduled for trial, but at that time, the parties had already agreed to put trial over for nearly two weeks until December 11th. And Mr. Garcia had also written two letters dated November 22nd, complaining about counsel, and the trial court was on notice of the conflict between the two and had already assumed on November 28th that he was going to hold a margin motion for substitution of appointed counsel. But he – there was also a FREDA motion that was made on that same date for self-representation, and that was denied as untimely, but the trial court on November 28th never addressed the motion to discharge retained counsel, which under Gonzales-Lopez would be reversible error, is our – but without even getting to the November 28th error, he renewed his request on December 11th, which was the very next court date, and the trial court erred again by holding him to the margin standard and requiring that he show an irreconcilable conflict. He went through his list of complaints that Vargas had never visited him in jail, had never – didn't prepare a defense, had never interviewed any witnesses on his behalf, that she claimed that she knew the judge very well and could get the whole thing dismissed behind closed doors. The trial court did not ask Ms. Vargas to address any of his claims, and he simply asked a few yes-or-no questions. Are you ready for trial? How did the court of appeal analyze this, the California court of appeal? The California court of appeal stated that it was error to – to treat the – treat the motion as a margin motion, but that it didn't make a difference because the – based on the situation that the trial court would have denied it as untimely anyway. But our position is that that's – that's an unreasonable determination of the facts, and contrary to Supreme Court law, because without an adequate inquiry, there's just no – there's no factual basis for such a determination. There's no – there's no – there's nothing on the record regarding the conflict between Vargas and Garcia. Well, isn't it that he believed there was a conspiracy between everybody to forge signatures on the six-pack and all of that kind of stuff? He did. Yes, he did. And he also – That seems to be the basis of the whole thing. Well, he – when he – she's retained counsel. When he hired her, she had agreed – he said that she agreed to challenge all of these things, and she never did. And his statements are unrefuted on the record, because she never denies that she told him all these things, that she said that – that she promised to talk to the trial court behind closed doors and try and get it dismissed. So the trial – the trial court doesn't look into any of that. And I think with respect to his Sixth Amendment right to choice of counsel, the trial court has a duty to take that into account if it's not going to make an arbitrary decision. And it didn't do that. And I – and that's contrary to Morris v. Sloppy. He – the trial court was focused on expeditiousness. Is it contrary to Plumlee? Yes, it is. Because in Plumlee, the trial court made extensive factual findings on the record. And the trial court asked both sides about Plumlee's beliefs, which it determined were subjective. Here, the trial court didn't make any kind of inquiry like that. So there was no way for it to determine whether there was an objective basis or not, or whether – and also in Plumlee, there was evidentiary hearing. And again, the trial court made extensive factual findings. And there's a – But if we take the undisputed facts as asserted by your client, aren't they quite similar to the allegations that Plumlee was making? Conspiracy and so forth? Perhaps, but there was – without – there was no inquiry by the trial court. And the difference, though – But if the – but if the inquiry would result in the – in other words, we presume what your client says is true. And if Plumlee says under that inquiry, there's no conflict, how is the error? Well, I think the difference – in Plumlee, there was a point to counsel. In this case, we're talking about retained counsel, and it's the Sixth Amendment right to have counsel of this choice. In Plumlee, it was more, was there an irreconcilable conflict such that he's – he's eligible to have another attorney appointed for him. So I think the analysis is a little bit – a little bit different here. And what was he asking for in the second – on the last go-around? He was asking to represent himself, or he was asking to bring in a new – He was asking on the second – If you wait until Judge Fischer finishes his question, we'll understand your answer. I'm sorry. I'll remember what my question was. I'm sorry. I'm sorry. I'm sorry. Could you repeat? See what happens? Look how much time is going by. My question is, what was he asking for with respect to counsel at the last motion that he made? On December 11th, he requested to discharge counsel. And do what? He didn't specifically say, because I think he assumed that he needed the judge's appointed counsel. The judge made an assumption that he was requesting appointed counsel. But he did not say that. He didn't – he didn't make it clear whether he was – He didn't say it, period. Yes, that's correct. He didn't say that. But I think in the context of he has the right to fire his attorney as well as the right to hire his attorney under the Sixth Amendment choice of counsel. So I think that the analysis is the same, whether he's asking for appointed counsel or retained counsel. Did the court of appeal look to the effect and conclude – maybe it was the district court – look to the fact that the – on the supposed conspiracy that the people who would have been brought forward at an evidentiary hearing, in fact, did testify in the course of trial? So what do we do with that? His conspiracy theory was pretty much blown apart, wasn't it, by the fact that the witnesses did identify their signatures and cleared up the – what he thought was the documentary problem? Well, I don't – I don't think that's necessarily relevant to his right to choice of counsel. Well, I mean, that's – that was the basis of his conflict. So what you're saying – so what should have – what should have happened at the – before the trial judge when he decides that he has this suspicion, which, as Judge Focus said, at least as I read a lot of what he's talking about, is this notion that she should have gone after whether the signatures were bogus, that this was a big conspiracy between the lawyer – his lawyer and the police department to cover a falsification of records, which turns out to be substantively wrong. So what should the trial judge confronted with this on the eve of going to trial have done? Well, I still think the trial judge should have looked into it, because – What do you mean, looked into it? Should have questioned Vargas on – on Mr. Garcia's allegations, because one of the reasons that he believed that there was a conspiracy between his lawyer and the prosecution is because she had failed to do anything that he could see. She failed to visit him in jail, failed to discuss any defense with him, interview any witnesses. And so he – based on what she failed to do, he came to the belief that she was part of this conspiracy, because he couldn't understand how – why she wasn't doing something to challenge the witness identification. And the witnesses also – if you look at what they said at the preliminary hearing and what they said in police reports, there is a very big difference between what they testified at trial and trial counsel failed to impeach them on any of this. And it – I think that he may – at the very – after he was convicted, he made a motion for a new trial, and the new trial attorney, in getting the file documents from Ms. Vargas, found that she didn't even have a copy of the preliminary hearing transcript. So there's a basis for his belief that she was doing nothing to help him in his defense and that if she had been an effective advocate, that it would have been a different situation. We're down to a minute. Do you want to reserve? I'll reserve the rest of my time for it. All right. Thank you. Good morning. May it please the Court. Deputy Attorney General Sarah Farhat on behalf of Respondent and appellee. Your Honors, I believe the Respondent's position is fairly well set forth in the briefing, and so with your permission, I'd like to just address the cases set forth in the Court's recent order, if that's okay. That's fine. The question of the order was – I think the panel was concerned about these new cases that had come up, whether that affects the analysis at all. Well, Your Honor, I think that they do play into the analysis, and I'll explain. I'll focus on the December 11th motion, because that's the motion dealing with the discharging of counsel, not – it's not the FREDA motion. Granting the December 11th request would have hindered the fair, efficient, and orderly administration of justice. Not only was the request made on the morning set for trial, and both sides had already announced that they were ready to proceed, witnesses had been placed on call, but the new counsel would become acquainted with the case and get up to speed in order to proceed to trial. Now, that – those facts are similar to the Miller v. Blacketter case. In that case, an attorney had not yet been retained to take over the case, and it was not clear how much time a new attorney would need in order to prepare for trial. The motion was made on the morning trial was set to begin, and the defendant in that case had time prior to his motion in order to retain counsel. Similarly here, the motion was made on the morning set for trial. Both sides had already announced that they were ready. The petitioner had not yet retained new counsel or had – it wasn't clear whether or not he wanted to have appointed – had counsel appointed to him, and it was unclear how much time was going to be needed in order for a new attorney, whether retained or appointed, to come into that case and to get it up to speed in order to proceed to trial. So that would have – the December 11th request would have necessarily created further delay. The case – our case is dissimilar to Bradley v. Henry because there the defendant had already retained new counsel. The counsel had already indicated that he would be ready to proceed to trial on the date that was already set, and there would have been no further delay. So that's – that case is factually dissimilar to what our case presents here. Secondly, the appellant failed to demonstrate any significant conflict causing a total lack of communication or a breakdown in the attorney-client relationship. Appellant's main problem with the – his attorney was this disagreement about the defense police conspiracy theory that he wanted to – to forward at trial. The trial attorney apparently wasn't convinced that that was a viable defense, and so she made the tactical decision not to pursue it. The case is dissimilar to the Bradley v. Henry case because there the conflict was – conflict was much more severe. In Bradley, the trial attorney had filed a complaint against their attorney with the State Bar, had threatened to personally sue their trial attorney, and the attorney's insurance carrier had required the attorney to cease communication with the client. In our case, the only problem is this defense that the defendant wanted to pursue. Yes, the defendant wanted to defend it on a different grounds than his attorney wanted to, which is a fairly serious breakdown, wouldn't you say? Even though it may not have been objectively reasonable for the defendant to present this defense, isn't the defendant entitled to pursue his own theory? Your Honor, the – the defense that Mr. Garcia wanted to pursue, the trial attorney, Ms. Vargas, listened to the defense. She considered it. She considered the witnesses he wanted to put on, and when it comes down to it, any tactical decisions made for trial are left to the discretion of the trial attorney. None of – as I think I pointed out in my – in Respondent's brief – or Appelli's brief, attorneys that had been retained in the case had chosen to pursue this defense. So I think that it's – it's reasonable to conclude from the record that it wasn't really a viable defense, particularly when – Well, it may not have been viable, and it may be – have a fairly decent harmless error argument, but in theory, the defendant is entitled to pursue the theory he wants to pursue in defense of himself at criminal trial, wouldn't you agree? Well, but the – I mean, you can't – you can't just say, we're going to – particularly with a retained counsel, you can say, you ought to be able to fire him, and he can proceed with his Ferretta, exercise his Ferretta rights and go forward. Right, but I don't think that the trial attorney is bound to pursue any old defense that the defendant wishes to forward, regardless of the – the evidence that there may be out there supporting that defense. What about counsel's argument, though, that the trial judge didn't do anything to really inquire into the basis of this conflict? Well, I disagree with that, because the trial judge did inquire into what Vargas had done in order to pursue that particular defense. The trial – I mean, he – he provided the defendant an opportunity to air all of his complaints with counsel, including all of the details about wanting to pursue this particular defense, and he gave Vargas the opportunity. He asked her straight out, you know, have you listened to the defendants? Yes, he gave a series of leading questions, really. And at the end, he said, do you have anything to add? I'm sorry? I mean, it was a series of leading questions of yes, no, yes, no. He didn't take testimony. He didn't say, what have you done? Well, granted, it wasn't as an extensive inquiry as in the Plumlee case, but I don't think that that's necessarily required. He asked – he inquired into counsel about whether or not she'd even considered the case, and she said that – or the defense. And she said that she had. And she had considered the witnesses, and she had consulted a handwriting expert, and it turned out at trial that the defense, as Your Honor indicated before, had just been blown apart by the witness who got on the stand and testified that, yes, this is my signature. It's not forged. It's possible that the attorney knew that before even starting trial, and I think the fact that the questions were leading and it was confined to yes or no, I don't – I think that perhaps the judge maybe didn't want to elicit any attorney-client privileged information about what separation had been done or what she had discovered in pursuing that particular defense. So I think the inquiry is adequate. How long do you think it took? I'm sorry? How long do you think the inquiry took? It's about a page of transcripts, so probably 45 seconds, a minute, two minutes? The inquiry with the attorney? Yes, with the attorney. It was a short inquiry, but the defendant did have ample time to express his concerns, and the judge boiled it – the trial judge boiled it down to this one particular thing. And so, you know, the extent of the inquiry as – you know, the judge in Plumlee, I think, went into extensive detail. I mean, he held a subsequent state habeas evidentiary hearing, you know, but I think that the issue in that case was – or the problems with counsel in that case were perhaps more complicated than are presented here. Where's the – where's the district court finding that delay was a factor? The district court finding in our case that delay was a factor in the second motion? Your Honor, the district court, if my memory is serving, held that the trial court's – or the court of appeals' application, or the trial court's application of the Wyndham factors. Well, I mean, I don't think there is a finding by the trial court of delay.  I don't know if the trial court of delay was on the eve of trial, but I didn't see anything – and perhaps you can point to me on the record where the trial court actually said, this is on the eve of trial. I'm not going to – it would be disruptive, et cetera, et cetera. I don't – I didn't see any findings to that effect. Well, the trial court didn't make the finding that, you know, this is on the eve of trial, therefore it's untimely, but the court of – the California court of appeal did. And its reasoning, if we're looking – the standard of review is ADEPA. And so if we're looking through ADEPA, there's – I just thought that – not to interrupt you, but I just thought that was very unusual, because usually you have a trial court finding that this is untimely, it's on the eve of trial, and this is – you know, in balancing the factors, I'm concluding that this is just too late. Now, it's kind of rare for an appellate court to say, well, we're going to presume it's too late for the trial court in the absence of any findings. Your Honor, perhaps – How can an appellate court say this is really too late for the trial court to consider when the trial court hasn't considered it or made rulings on it in the first instance? Well, the record – I mean, the record – without findings, the record demonstrates the motion was made on the day it was set for trial. Perhaps it was just presumed that it was made on the eve of trial for that purpose. I don't believe there are any specific findings by the trial court itself. That's unusual, because usually trial judges make rather extensive findings about how this has disrupted the court's calendar, that I think this is for the purpose of delay, that the defendant may or may not be manipulating the system, and so forth. And there's just an absence of findings in this case. The trial judge simply said, no, the representation's adequate. Let's go forward. Well, perhaps to timeliness. I would disagree about findings to delay. But what is important is that the record bears out that it was untimely. The court of appeal found that it was untimely, and this Court's review through ADAPA has to give deference to that state court's findings. So absent any findings by the trial court, there's still the court of appeal findings, which I think are relevant. On November 28, the judge said, it appears that defendant's constant motions for self-representation are not made in a manner that is in the best interest of justice in utilizing the entire Wyndham criteria. Yes. What does that mean? In utilizing the entire Wyndham criteria? I think the judge had considered the Wyndham factors, factors set forth in the people versus Which are what? The quality of the representation up to that point that the motion is made. The petitioner's prior proclivity to substitute counsel. The reasons for the request. And I believe any delay that would have been caused. So what you believe, or is one of the Wyndham factors delay? My recollection, I don't have a case in front of me, Your Honor. I apologize. But I recollect that one of the factors, one of the considerations is delay of the proceedings. Our question is about the same trial judge who ruled in November. I'm sorry. The December trial judge was not the same trial judge who ruled in November. Right. Is that correct? I didn't notice that. I can take a look at the record really quickly. It's easy to find out. Okay. Take our word for it. Thank you, counsel. Rebuttal. Yes. And there were three different trial judges that were involved in this case. And so there were different judges ruling on different motions. I just wanted to point out a few things. First of all, he retained Ms. Vargas because she promised to pursue this theory that there was an issue with the witness identification. So he had the right to choose what kind of defense that he wanted her to mount. What does pursue mean? Investigate it or present it at trial? Present it at trial. She agreed to do that. And he makes those accusations, and she doesn't deny them. And she agreed to also meet with the trial judge and try and get the whole thing dismissed. So she this was all part of their agreement when she was retained. So I think he has the right to. Well, if she concludes it's a bogus theory, doesn't she have an ethical obligation not to pursue it? That may be true, but then she shouldn't have promised to do that in the beginning or she sort of explained it better to him. I mean, she didn't, according to him, she never visited him in trial, never discussed anything with him. And then all of a sudden, she just says, I'm not doing this. Well, that really isn't what she indicates when she's questioned about it. When she's questioned about it? Well, she, it was just a series of yes or no questions. She doesn't indicate very much at all. On the other hand, though, I mean, there's a tension between the right of the defendant to pursue a defense and, as Judge Traut points out, the ethical obligations of the lawyer, which we've talked about in some cases. And if, even if the defendant instructs the attorney not to pursue a particular line, we felt that the attorney has a duty to investigate the defenses and so forth. So it's, you can't, judges rely on attorneys not to put on frivolous defenses. Yes, that's, I... So I guess this leads me to my question. Where does this get you? I mean, let's assume you win, you go back to trial, he has the right to put on this defense that I don't think anybody thinks is going to be successful. Where does it get you at the end of the day? He also, he has the right to an effective advocate. And I think the record shows that she was not an effective advocate. She did not, she didn't cross-examine in an effective way. She didn't bring out all of these items that, you know, Mr. Garcia has green eyes. The witnesses testified at the preliminary hearing that the suspect had brown eyes. None of this came out at trial. And I think if she had been an effective advocate, the results would have been different. And we don't get there because I think right now we're just talking about the Sixth Amendment right to choice of counsel. And if it's violated, then prejudice is presumed and he gets the right to do it again with either appointed counsel who's going to be effective or with retained counsel who's going to advocate his defenses in a proper manner. And also, and I do, I just want to address quickly this Court's decisions in Miller, Tongley, Larson, and Bradley. And I think they all reaffirm the trial court's duty to make an appropriate inquiry into conflicts between defendant and counsel. In Plumlee, again, there was an extensive inquiry. In Miller, the trial court also made an inquiry into the sole contention that counsel wasn't prepared for trial. Trial counsel questioned both sides. It even took time out to look at a motion that was filed by counsel to assure itself that the counsel was being an effective advocate. In this case, the trial court didn't do anything like that. And if he had done anything like that, I think at most it would have found a woefully deficient motion for a handwriting expert, which is actually included at ER-114, which has the name of the handwriting expert is left blank. There's glaring grammatical errors. If he had taken a look at that, it would have been clear to him that she was not being an effective advocate. And I think that the inquiry that's required under the Sixth Amendment was not made in this case. Roberts, thank you both for your arguments. The case is heard and will be submitted. The case of Kohler v. Estrue is submitted on the briefs. The United States v. Magrassia-Taylor is submitted on the briefs. And we will proceed with oral argument on Regal-Beloit v. Kawasaki.
judges: Trott, Thomas, Fisher